MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Acting Chief, Criminal Division

W. DOUGLAS SPRAGUE  (CABN 202121)
Assistant United States Attorney

    450 Golden Gate Ave., Box 36055
    San Francisco, California 94102
    Telephone:  (415) 436-7200
    Fax: (415) 436-7234
    E-Mail: doug.sprague@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> LILY C. ASPILLERA, ) <br> ) <br>     Defendant. ) <br> _____ ) | No.  CR 09-1102 SI <br><br> GOVERNMENT'S SENTENCING MEMORANDUM <br><br> Date:   October 26, 2010 <br> Time:  11:00 a.m. <br><br> Honorable Susan Illston |

    Defendant, Lily Aspillera, abused her position as a trusted employee at a major financial services firm to fleece one of her clients out of approximately $1.7 million, which she enjoyed tax free and in addition to her approximately $90,000 per year salary.  Like so many who commit fraud, over time she increased the amount of money she embezzled, apparently emboldened by not getting caught.  Her crime was neither aberrant nor motivated by desperation; instead, she perpetrated her fraud over many years and used its spoils to buy a home in a posh neighborhood, thousands of dollars of fancy jewelry, and luxury automobiles.  For the reasons set forth below, the government joins the Probation Officer and respectfully requests that the Court sentence defendant to 41 months of imprisonment, three years of supervised release, restitution, and the mandatory special assessment of $1,300.

GOVT. SENT. MEM;
CR 09-1102 SI

## I. **The Offense Conduct**

The details of defendant's criminal scheme are set forth in the thorough Presentence Investigation Report (PSR). In sum, defendant was employed as an administrative/executive assistant at Ernst & Young (E&Y). Victim K.K. had been an E&Y client since approximately 1990. In approximately 2000, defendant began assisting on K.K.'s account. Her work included, for example, paying K.K.'s credit card bills and certain household expenses, including staff wages. K.K. frequently pre-signed checks drawn on his accounts, and defendant filled in the payees and amounts as the needs arose.

Beginning in approximately 2002, defendant wrote checks drawn on K.K.'s accounts payable to herself and to "Cash" without authorization; these checks totalled more than $1 million. In addition, defendant wrote checks payable to two of K.K.'s employees for amounts greater than they were due, then had them cash the checks and give the excess cash back to defendant. To perpetrate this aspect of her fraud, defendant told these employees that the cash they were bringing defendant was so she could pay other employees. Defendant also wrote checks to pay hundreds of thousands of dollars worth of her own and her family members' American Express bills. Some of the charges on these bills included stays at luxury hotels overseas (one such stay alone exceeding $8,000 in hotel charges), golf at places such as Pebble Beach, domestic and overseas airline travel, high-end fashion purchases, and expensive meals at fancy restaurants for what must have been groups of diners. Finally, defendant wrote some checks out of K.K.'s account directly for her own benefit, including: a $150,000 check to defendant's sister-in-law that she used as a downpayment on a house that defendant then moved into (an apparent bank/mortgage fraud maneuver); checks to purchase and make payments on 2 BMWs; and checks to buy vast amounts of jewelry. During the course of her scheme, defendant lied to her supervisors at E&Y about matters related to K.K.'s accounts and removed his account statements to conceal her fraudulent scheme.

Defendant, of course, paid no taxes on any of the approximately $1.77 million she diverted over the course of her 6-year scheme. As a result, she enjoyed an average tax-free additional income of approximately $300,000 per year of her scheme, which she used to live a

life of luxury funded by a client who, like her employer, trusted her with personal financial information and the corresponding significant responsibility.

## II.  The Guidelines Calculation

The government and the Probation Officer agree that the Total Offense Level is 22 and that defendant's Criminal History Category is I, resulting in a guidelines range of 41-51 months.

## III.  Additional Factors Regarding Sentencing

The nature and circumstances of defendant's offense are set forth above in Section I.  In short, defendant perpetrated a scheme over a very long period of time – at least 6 years. The motivation behind her fraud scheme was simple greed; she purchased expensive electronics, top designer fashion items, vast amounts of jewelry, dinners at gourmet restaurants, lodging at luxury hotels, and golf at resorts such as Pebble Beach.  To execute this long-running scheme, defendant had to and did betray the confidence and trust of a generous employer who paid her well and a specific client who relied upon her for years.  In fact, this client was so generous that he had loaned her $20,000; she repaid that generosity by fleecing him out of almost 100 times that amount.

In terms of the other characteristics of the defendant, defendant reports she had a happy childhood and was raised in a normal and financially stable household.  (PSR, ¶ 53.)  Defendant graduated from high school and was just a few credits short of graduating from college.  (PSR, ¶¶ 63, 64.)  She has been married for 41 years and has three children, all of whom live in Northern California.  She has never had substance abuse problems or mental/emotional problems, though she has suffered a series of serious heart problems over the past 17 years.  (PSR, ¶ 60.)  In short, there is nothing about the defendant's background to suggest – and much less to excuse – involvement in criminal conduct, particularly a long-running scheme in which she deceived those who placed so much trust in her.

A sentence including a substantial prison term is necessary to reflect the seriousness of defendant's lengthy, high-dollar scheme, to promote respect for the law, to deter other corporate employees who may consider stealing from their employers or their clients, and to provide adequate punishment for her serious crimes.

Other factors justify a sentence at the low end of the guideline range. As demonstrated in her statement to the Probation Officer, defendant appears to be genuinely remorseful for her actions. Defendant does not appear likely to reoffend, in large part because she is unlikely to be placed in such a position of financial responsibility in the future. In addition, defendant and her husband appear to have serious health issues, and a low-end sentence of imprisonment increases the chances they can have meaningful time together after her term of incarceration. Defendant is also fortunate to have immediate family in Northern California, so she will have a support network available to her when she transitions back into a functioning and law-abiding member of society.

But these reasons do not erase the seriousness of defendant's conduct. Defendant perpetrated an insidious, long-running scheme in which she deceived those closest to her so she could live a life of luxury funded by someone else. Her employer trusted her and paid her well – approximately $90,000 per year. She repaid that by abusing that trust to steal hundreds of thousands of dollars. Her client trusted her and graciously loaned her $20,000. She repaid that trust and generosity by stealing approximately $1.77 million from him.

## IV.  **Restitution**

That undisputed theft of $1.77 million results in defendant owing that amount in restitution to be paid as set forth on page 6 of the Probation Officer's Sentencing Recommendation. In addition, however, defendant owes $644,843 in back taxes.[1] That amount shall be sent to the following address:

```
IRS - RACS
Attn: Mail Stop 6261, Restitution
333 W. Pershing Ave.
Kansas City, MO 64108
```

//

//

---

[1] The supporting documentation for this amount has been provided to the defense, and the government does not anticipate any objection to it. If there is any objection, the government will address it.

GOVT. SENT. MEM;
CR 09-1102 SI                4

**CONCLUSION**

For at least six years, defendant abused the trust placed in her by her employer and by her client so she could live a life of luxury and shower herself and her family with the finest food, jewelry, entertainment, and lodging that someone else's money could buy. She has challenges in her life now, including her and her husband's health, but those are not reasons for her to escape responsibility or punishment for what she did over so many years. For these reasons, the government respectfully requests that this Court sentence defendant to 41 months in prison, 3 years of supervised release, restitution of $2,414,843, and the mandatory special assessment of $1,300.

//

DATED: October 19, 2010

Respectfully submitted,

MELINDA HAAG
United States Attorney

/S/
_____
W. DOUGLAS SPRAGUE
Assistant United States Attorney